**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.  18-cr-00228-01** |
| | * | |
| | * | |
| **VERSUS** | * | |
| | * | |
| | * | **JUDGE DOUGHTY** |
| **ROBERT E. ROBINSON** | * | **MAGISTRATE JUDGE HAYES** |

**UNITED STATES' SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE OR RELEASE TO HOME CONFINEMENT**

NOW INTO COURT, through undersigned counsel, comes the United States of America, who respectfully files this Supplemental Response in Opposition following the Defendant's Supplemental Memorandum in Support of Compassionate Release (Rec Doc. 58).  For the reasons set forth below, the Defendant's motion should be denied.

**A. The Defendant did not exhaust administrative remedies as to his request for compassionate release based on COVID-19.**

Robinson's supplemental memorandum argues that he has exhausted administrative remedies based on his pre-COVID request for compassionate release. The Government disputes this and re-urges its previous arguments that Robinson's pre-COVID request does not satisfy the requirement that he exhaust administrative remedies as to his current COVID-19 specific request, as it presents a new argument and calculus for compassionate release not first presented to the BOP for

1

consideration.  *See* Rec. Doc. 53 at pg. 2-9.   As a result, the Court is without jurisdiction to consider his COVID-specific request for compassionate release.

### B. Regardless, the defendant is not a suitable candidate for compassionate release, so his motion should be denied.

Alternatively, even if the Court has jurisdiction to consider his Motion, it should be denied for multiple reasons.

"[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010) (cleaned up). Consistent with that principle of finality, 18 U.S.C. § 3582(c) provides that a court generally "may not modify a term of imprisonment once it has been imposed," except in three circumstances: (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), such as that presented by the defendant; (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced based on a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).

Relevant here, under § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling circumstances," consistent with guideline policy statements.  Under the statute as amended by the First Step Act, the Court may act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

Section 3582(c)(1)(A) provides that any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Here, the applicable policy statement, U.S.S.G. § 1B1.13, provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement."[1] U.S.S.G. § 1B1.13.

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (1) suffering from a serious physical or medical condition, (2) suffering from a serious functional or cognitive impairment, or (3) experiencing deteriorating physical or mental health because of the aging process,

---

[1] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). See First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239. In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

any of which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility, and from which he or she is not expected to recover.  U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets forth other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G.  § 1B1.13, cmt. n.1(D).

With regard to the last consideration relating to "extraordinary and compelling reasons" identified by the Director, BOP has issued a regulation defining its own consideration of compassionate release requests. *See* BOP Program Statement 5050.50.[2]   This program statement was amended effective January 17, 2019, following the First Step Act's passage.  It sets forth in detail BOP's definition of the circumstances that may support a request for compassionate release, limited to the same bases the Sentencing Commission identified: serious medical condition, advanced age, and family circumstances.[3]

---

[2] Available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf .

[3] The policy statement is binding under the express terms of § 3582(c)(1)(A), and because it concerns only possible sentence reductions, not increases, it is not subject to the rule of *Booker v. United States*, 543 U.S. 220 (2005), that any guideline that increases a sentence must be deemed advisory.  *See Dillon v. United States*, 560 U.S. 817, 830 (2010) (making clear that the statutory requirement in § 3582 that a court heed the restrictions stated by the Sentencing Commission is binding).

Robinson contends he is entitled to compassionate release based on health conditions including stage five kidney disease, diabetes, and heart problems.  Rec. Doc. 58 pg. 7.  While Robinson does have certain serious medical conditions, but for the COVID-19 pandemic, he would present no basis for compassionate release.  His medical ailments are of a type that can be controlled and do not present any impediment to his ability to provide self-care in the institution. *See e.g., United States v. Maher*, 2020 WL 390884, at *2 (Jan. 22, 2020) (denying compassionate release to a defendant whose medical records showed "a history of Crohn's disease, prostate cancer, and hepatitis C, as well as significant unexplained weight loss, bacterial pneumonia, and acute exacerbation of bronchiectasis" on the ground that the records did not show his inability to care for himself) ; *United States v. Lynn*, 2019 WL 3082202, at *2 (S.D. Ala. July 15, 2019) (denying compassionate release for a defendant who complained of chronic kidney failure, atrial fibrillation, 70% blockage in multiple coronary arteries, high cholesterol, cervical disc degeneration, enlarged prostate, and other ailments, as none of those conditions was terminal, or substantially diminished his ability to provide self-care within the environment of a correctional facility); *United States v. Bunnell*, 2019 WL 6114599 (D. Ariz. Nov. 18, 2019) (denying compassionate release even though the defendant had "serious medical issues" including "arthritis, sciatica, bulging lumbar discs 2-5, scoliosis, and degenerative disease causing central stenosis in his spine" and was confined to a wheelchair, as none of these was a terminal illness or substantially diminished his ability to provide self-care).

The only question, then, is whether the risk of COVID-19 changes that assessment. The United States acknowledges that the defendant presents risk factors identified by the CDC as heightening the risk of severe injury or death were the inmate to contract COVID-19, namely, at a minimum, chronic kidney disease requiring dialysis, and diabetes.[4]   The United States agrees that these chronic conditions present "a serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" as stated in § 1B1.13, cmt. n. 1(A)(ii), in that at this time, his ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished within the environment of a correctional facility by the chronic condition itself.[5]

Nonetheless, the defendant is not entitled to relief. This Court must consider all pertinent circumstances, including the § 3553(a) factors, and possible danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring consideration of the § 3553(a) factors "as applicable") and U.S.S.G. § 1B1.13(2) (requiring consideration of whether the defendant is "a danger to the safety of any other person or to the community, as provided in 19 U.S.C. § 3142(g)"); *see also*, *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) (affirming the denial of compassionate release where the district

---

[4] *See* Centers for Disease Control, Groups at Higher Risk for Severe Illness, available at   https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html

[5]   Accordingly, as the government concedes that he meets the threshold test of a medical condition defined in note 1(A), this Court need not consider whether the defendant's condition falls under the "catch-all" provision of note 1(D).

court properly relied on the fact that an inmate suffering from terminal cancer had a violent criminal history, had committed a violent offense, and had served less than half the sentence imposed);  *United States v. Watson*, 2020 WL 1890541, at *3 (N.D. Okla. Apr. 16, 2020) (finding the defendant was not eligible for compassionate release because he poses a danger to the community in light of the offense of conviction (six armed robberies), his lengthy criminal history as set forth in the PSR, and his various disciplinary infractions in prison, which "contradict his claims that imprisonment has changed him," and the fact that even under current law, he would face a substantial sentence of 42 years on certain firearms charges alone, and he had served only "a small fraction" of the sentence originally imposed by the court )..

At present, the defendant's medical conditions are appropriately managed at the facility, which is also engaged in strenuous efforts to protect inmates against the spread of COVID-19, and which would also act to treat any inmate who does contract COVID-19.[6]  *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (noting BOP's "extensive and professional efforts to curtail the virus's spread.").  This is in contrast to the defendant's proposed release plan (Rec. Doc. 53-1 pg. 1) which insures neither the safety of the community nor the defendant because it does not include any

---

[6] Indeed, BOP has been planning for potential COVID-19 transmissions since January 2020, establishing a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, informed by guidance from the World Health Organization.  BOP's plans to minimize the risk of COVID-19 transmission into and inside its facilities comprises several preventive and mitigation measures, including the screening of inmates and staff; limiting contractor access; suspension of social and legal visits; restrictions on inmate movements inside and between BOP facilities; and modified operations.  BOP's adaptations to the ongoing crisis are continuous; it is currently operating under Phase VII of its COVID-19 response plan.  *See* https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp

provisions for quarantine, how he will be transported to his proposed residence in Oakland, CA, no indication that his living situation will not expose him to COVID-19, and states that he will be living with his mother, who is in "dire need of help and medical assistance." *See United States v. Feiling*, 2020 WL 1821457, at *8 (Apr. 10, 2020) (noting that releasing the defendant to his home "presents its own risks to Defendant's health, the health of his family and public safety," including risks posed to his wife, who is also elderly and has health problems, or to his children, who would have to travel across state lines to attend to him).

But aside from all of the above, this Court should deny the defendant's motion because he has not demonstrated that he will not pose a danger to the community if released, or that his release comports with the applicable § 3553(a) factors.

Robinson's underlying conviction and criminal history both indicate he will pose a danger to the community and performs poorly under supervision or with conditions imposed on him. Robinson's underlying conviction is for Possession with Intent to Distribute a CDS (marijuana) and Possession of Firearms in Furtherance of a Drug-Trafficking Crime. At sentencing, Robinson was held responsible for approximately 7.8 kilos of marijuana. PSR ¶27. Of the three firearms that he possessed, one was an Anderson (AR-15 style) pistol loaded with 30 rounds of ammunition. Three AR-15 magazines were recovered, as were over 500 rounds of various caliber ammunition. PSR ¶12. Importantly, at this time, Robinson was already a convicted felon and not supposed to be in possession of firearms. Robinson admitted to the probation officer preparing his PSR that he sold marijuana even while

under supervision with Louisiana State Probation, and had been selling marijuana for five or six years.  He said he would bring marijuana from California to sell in the Monroe, Louisiana area because the market was better there.  PSR ¶ 30.

Robinson's criminal history includes a Louisiana 2015 felony conviction for conspiracy to distribute a CDS (marijuana) in which a package containing 7 pounds of marijuana was sent to him from California, for resale, for which he was sentenced to 3 years, suspended, and placed on probation.  He also has a Texas 2017 Possession of Marijuana (11.5 pounds) conviction for which he was sentenced to 10 years, suspended, and placed on probation.  Robinson also has a Louisiana 1997 misdemeanor possession of marijuana conviction.  He has a 2014 arrest for possession of a controlled substance in a prison.  PSR ¶¶ 46-48, 52.  Robinson also recently filed a motion to vacate his guilty plea, essentially arguing that he should be allowed to withdraw his guilty plea because marijuana is not dangerous and marijuana laws are bad policy.  Rec. Doc. 40.  This indicates a lack of respect for the law.  Robinson's possession of multiple firearms despite being a convicted felon, possession of over 500 rounds of ammunition, as well as his admission that he continued to engage in drug trafficking while on probation all indicate that he does not comply with conditions imposed upon him and would pose a danger to the community.

Further, Robinson has served only a fraction of his sentence.  At the time he requested compassionate release, the BOP calculated that he had served only 18.2% of his sentence.  *See* Rec. Doc. 53-1 at pg. 1.  Robinson's projected release date is February 29, 2024.  Importantly, of Robinson's 72 month total sentence, a 60 month

portion of it is for Possession of Firearms in Furtherance of a Drug-Trafficking Crime which is a congressionally mandated minimum pursuant to 18 U.S.C. § 924(c).  To reduce Robinson's sentence would negate congressional intent in establishing the mandatory minimum for this offense.

## CONCLUSION

For the foregoing reasons, the defendant's motion for compassionate release should be denied for lack of jurisdiction, or alternatively, denied on the merits.

Respectfully submitted,

DAVID C. JOSEPH
United States Attorney

BY:     /s/ Brian C. Flanagan
BRIAN C. FLANAGAN (LA Bar #35125)
Assistant United States Attorney
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101
(318) 676-3600